**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PEMENO SHIPPING CO, LTD., | } | |
| *Plaintiff(s)* | } | |
| | } | |
| v. | } | CIVIL ACTION NO. H-04-2996 |
| | } | |
| LOUIS DREYFUS CORPORATION, *et al.*, | } | |
| *Defendant(s)* | } | |

**OPINION & ORDER OF PARTIAL DISMISSAL**

Pending before the Court are the following motions:

- Plaintiff Pemeno Shipping Co. LTD's (Pemeno) motion for reconsideration (Doc. 43);

- Defendant International Fumigators Inc.'s ("International Fumigators") amended motion to dismiss (Doc. 55);

- Defendant Louis Dreyfus Corp.'s ("Dreyfus") motion for summary judgment (Doc. 45).

After reviewing these motions, the parties' briefs, and the applicable law, the Court **ORDERS** that Pemeno's motion for reconsideration is **DENIED**, International Fumigator's motion to dismiss is **GRANTED**, and Dreyfus's motion for summary judgment is **GRANTED**.

**I.    BACKGROUND AND RELEVANT FACTS**

Pemeno is the owner / operator of the M/V ASTIR, a Cypriot flagged bulk carrier.  On 26 July 2002, the M/V ASTIR arrived at the Louis Dreyfus Grain Elevator in the Port of Houston for the purpose of loading a cargo of bulk milling wheat (the "wheat" or "cargo").  Defendant Bags Holding LLC ("Bags") had purchased the wheat from Louis Dreyfus pursuant to a contract of sale which required Louis Dreyfus to, among other things, deliver the wheat FOB the vessel.  See, Contract of Sale, Ex. A Doc. 45.  The wheat's intended receiver was the National Supply Corporation ("NASCO"), a non-party to this suit who had earlier contracted with Verde Rocca Italiana LTD (Verde Rocca") to supply the wheat.  The bill of lading reflects the shipper as "Bags Holding GES, M.B.H on behalf of : VR Verde Rocca Italiana LTD."  See Bill of Lading, Ex. D,

Doc. 45.   Upon its arrival at the port, the M/V ASTIR was boarded by officials from the United States Department of Agriculture.   These officials inspected the ship and issued certificates confirming that all of the ship's holds were substantially clean and dry, were free of insect infestation, and were thus suitable to load and maintain the wheat.   Officials from the National Cargo Bureau also boarded and inspected the vessel's holds and declared it to be in suitable condition to carry the wheat.   Following these inspections, the M/V ASTIR was secured to the dock at the Louis Dreyfus grain elevator and the wheat was loaded by chutes into the vessel's holds.   During the loading operations, both the vessel and the wheat were inspected by agents and / or representatives of Defendant Orient Inspection and Consulting, Ltd. ("Orient Inspection").   Following this inspection, Orient Inspection issued a phytosanitary certificate, confirming that the bulk wheat was free from live insects, weevils, and their fragments, and that the cargo was substantially free from dead insects such that it was fit for human consumption. Finally, prior to its departure, the M/V ASTIR's holds containing the wheat were fumigated by Defendant International Fumigators, Inc. ("International Fumigators").

The M/V ASTIR then departed for Tripoli, Libya, the intended discharge port for the wheat, and successfully reached her destination.   At all times during the voyage all five holds and the ventilation accesses of the vessel remained closed.   Upon its arrival on 21 August 2002, the bulk wheat was sampled and inspected onboard the M/V ASTIR by inspectors from the Department of International Agricultural Quarantine for the State of Libya ("DIAQ").   Following the DIAQ inspection, the DIAQ issued its decision No. 4/2002 on 26 August 2002, prohibiting the entry of the bulk wheat into Libya and ordering that it be re-exported.   Pursuant to DIAQ Decision No. 4/2002, the bulk wheat was determined to be infested with various live insects, including but not limited to *Cryaptolestes Ferrugineus, Rhyzopertha Dominica*, and *Sithophilus Granarius*.

Due to the infestation, the M/V ASTIR remained in Tripoli Harbor under administrative detention from 21 August 2002 until 8 September 2002.   On 12 September 2002, by Order No. 254/02 dated 8 September 2002 (and again as a result of the infestation), the M/V ASTIR was

arrested by process of arrest issued by the President of the Tripoli Court based upon Court proceedings filed by NASCO.[1]  Pemeno was also made a party to these Libyan Court proceedings, although Pemeno, to date, has denied any liability to NASCO and has continued to defend itself in the suit. The M/V ASTIR remained under seizure in Tripoli until 26 November 2002.  The seizure was finally lifted on that date because Pemeno struck the following deal with NASCO: in exchange for releasing its ship, Pemeno provided NASCO with a Letter of Guarantee covering all of NASCO's costs associated with the infested wheat, including the full value of the wheat, letter of credit costs, and legal costs.  The amount of the Guarantee provided for and on behalf of Pemeno was 7,743,750 Sfr.

Following its release the M/V ASTIR sailed to Piraeus, Greece, where the wheat was sampled and subsequently fumigated.   On 24 December 2002, the M/V ASTIR left Greece and sailed to Al Salif, Yemen, whereupon the cargo was discharged, bagged, and reloaded onboard the M/V ASTIR for ultimate resale and delivery to the Sudan, where Pemeno had located another buyer.  Pemeno maintains that all of these actions were undertaken by it as part of its "care, custody and control" obligations under the Carriage of Goods by Sea Act, 46 U.S.C. § 1300, *et . seq.*, and its obligations to mitigate damages.

Subsequently, on 23 July 2004, Pemeno filed suit in this Court, asserting federal admiralty jurisdiction.  Pemeno has grouped its claims as follows:

| Defendant(s) | Claims |
|---|---|
| Louis Dreyfus, Bags Holdings and Verde Rocca | • Negligence<br>• Strict Products Liability<br>• Liability for Providing Dangerous Cargo to an Unknowing Carrier Under 46 U.S.C. § 1304(6)<br>• Breach of Bill of Lading |
| International Fumigators | • Negligence<br>• Negligent Misrepresentation |
| Orient International, Orient Inspection and Control Union | • Negligence<br>• Negligent Misrepresentation |

[1]Lawsuit No. 1282/2003, First Instance Court of North Tripoli, Third Summary Circle.

Pemeno has specifically alleged that its "damages include, but are not limited to," the following:

|       |                                                                                                                                                                        |
|-------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| (A)   | Fumigation costs;                                                                                                                                                      |
| (B)   | Vessel loss of use, demurrage and detention;                                                                                                                           |
| (C)   | Extra disbursements for tugs, pilots, berthing, stevedore and other associated charges at Lybia;                                                                       |
| (D)   | Class expenses;                                                                                                                                                        |
| (E)   | Expenses associated with the M/V ASTIR's call at Piraeus, Greece;                                                                                                      |
| (F)   | Off-hire due to Port Sudan being a sanctioned country;                                                                                                                 |
| (G)   | Bunker expenses;                                                                                                                                                       |
| (H)   | Other "care, custody and control" expenses;                                                                                                                            |
| (I)   | Miscellaneous expenses;                                                                                                                                                |
| (J)   | Losses which have or may result to Pemeno from Pemeno having to provide a guarantee in Tripoli, Libya to obtain release of the M/V ASTIR from arrest as a result of the wheat infestation; and |
| (K)   | Losses which may be incurred by Pemeno in the event Pemeno is found liable to NASCO by the Libyan court as a result of the proceedings brought by NASCO against Pemeno arising from the infested bulk wheat.[2] |

Pemeno estimates that its damages are in excess of $7,500,000.00. Orient Inspection and International Fumigators filed nearly identical motions to dismiss the claims against them. Those motions were granted by this court on 15 March 2005. See Order, Doc. 42. Rather than dismissing Pemeno's claims, however, this court granted Pemeno ten days to file an amended complaint. Pemeno has done so, adding a claim for breach of the Warranty of Workmanlike Performance ("WWLP"). See, First Amended Complaint, Doc. 44. It has also filed a motion for reconsideration urging the court to reverse its earlier ruling in favor of Defendants Orient Inspection and International Fumigators. Louis Dreyfus has filed a motion for summary judgment, Pemeno has responded, and the motions are ripe for ruling.

---

[2]*Id.* at p. 20.

## II.       LEGAL STANDARD

### A. Motion to Alter or Amend a Judgment. Fed. R. Civ. P. 59(e)

Courts have wide discretion to alter or amend their rulings in the interest of justice or to correct manifest errors in law. See, White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 450 (1982) (district court may rectify its own mistakes in the period immediately following the entry of judgment).  A Rule 59(e) motion is a motion that asks the court to reconsider matters properly encompassed by its former decision on the merits.  Osterneck v. Ernst & Whinney, 489 U.S. 169, 174-77 (1989).  The Fifth Circuit recognizes three grounds for granting a motion to alter or amend a judgment: (1) correction of clear legal error; (2) prevention of manifest injustice; and (3) consideration of newly discovered evidence.  Lavespere v. Niagara Mach & Tool Works, Inc., 910 F.2d 167, 174 (5th Cir. 1990).

### B. Motion for Summary Judgment.  Fed. R. Civ. P. 56.

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims.  International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., 812 F.2d 219, 222 (5th Cir. 1987).  The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial.  Fed. R. Civ. P. 56(c).  The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The non-moving party may not rest on mere allegations or denials in its pleadings, but

5

must produce affirmative evidence and specific facts. Anderson, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." Id. at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. Id. at 252.

All reasonable inferences must be drawn in favor of the non-moving party. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574. 587-88 (1986), citing United States v. Diebold, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. Anderson, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id., 477 U.S. at 249-50. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A., 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. Grimes v. Texas Dept. of Mental Health and Mental Retardation, 102 F.3d 137, 139-40 (5th Cir. 1996); Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871 (1994); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. Wallace v. Texas Tech University, 80 F.3d 1042, 1046 (5th Cir. 1996), citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992); Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889 (1990). Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. Ragas v. Tennessee Gas

Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998), citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir.), cert. denied, 506 U.S. 832 (1992).

## C. The Economic Loss Rule

In Louisiana ex rel. Guste v. M/V TESTBANK, 752 F.2d 1019 (1985), the Fifth Circuit, sitting en banc, elaborated on the Supreme Court's holding in Robins Dry Dock and Repair Co. v. Flint, 275 U.S. 303 (1927).  The M/V TESTBANK collided with another vessel in the Mississippi River Gulf Outlet and caused a chemical spill, which resulted in the closure of the outlet for several weeks. Suits were filed by shipping interests, marina and boat rental operators, fishermen, shops, and restaurants to recover their economic losses resulting from the loss of use of the outlet. The court examined the "pragmatic limitation on the doctrine of foreseeability" established in Robins Dry Dock, and held that physical injury to a proprietary interest is a prerequisite to recovery of economic losses in cases of unintentional maritime tort. 752 F.2d at 1022-23, 1028-29. "Proprietary interest" has been interpreted "to mean that a party must have control over the property tantamount to full ownership." Star Enterprise v. M/V Solena, 791 F. Supp. 655, 657 (E.D. Tex. 1992) (citing Naviera Maersk Espana, S.A. v. Cho-Me Towing, Inc., 782 F.Supp. 317, 320 (E.D.La.1992) and TESTBANK, 752 F.2d at 1034 (Williams, •., concurring) ("... the legal synonym for 'proprietary interest' is ownership...."). That does not mean, however, that title or ownership of record is necessarily required to have standing to sue under Robins Dry Dock / TESTBANK.  Rather, a party may establish a proprietary interest by sufficiently satisfying three criteria: "actual possession or control, responsibility for repair, and responsibility for maintenance." Texas Eastern Trans. v. McMoran Offshore Explor., 877 F.2d 1214, 1225 (5th Cir. 1989).  The Robins Dry Dock/TESTBANK formulation is equally applicable in the area of strict products liability. East River Steamship Corp. et al v. Transamerica Delaval Inc., 476 U.S. 858, 874 (1986) (citing Robins Dry Dock at 309).  In East River, the Supreme Court observed that,

> Permitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums.  It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product.  In this case, for example, if

7

the charterers – already one step removed from the transaction – were permitted to recover their economic losses, then the companies that subchartered the ships might claim their economic losses from the delays, and the charterers' customers also might claim their economic losses , and so on. 'The law does not spread its protection so far.'

East River Steamship Corp. et al v. Transamerica Delaval Inc., 476 U.S. at 874 (citing Robins Dry Dock at 309).

**D. Carriage of Goods By Sea Act 46 U.S.C. 1304(6)**

The Carriage of Goods by Sea Act ("COGSA") controls all contracts for the carriage of goods by sea between the ports of the United States and the ports of foreign countries."  Senator Linie GMBH & Co. v. Sunway Line Inc., 291 F.3d 145, 153 (2d Cir. 2002); Foster Wheeler Energy Corp. v. An Ning Jiang MV, 383 F.3d 349, 355 (5th Cir. 2004).   Section 1304(6) of COGSA makes the shipper liable to the carrier for all direct and indirect damages suffered by the carrier as a result of its non-consensual shipment of goods of a dangerous nature.  46 U.S.C. 1304(6). It is not necessary that the shipper know the dangerous nature of the goods.  Rather, it is only necessary that the goods be of a dangerous nature and cause damage. Senator Linie, 291 F.3d at 148.

**E. Maritime Contracts**

Federal courts sitting in admiralty jurisdiction apply federal common law to the interpretation of maritime contracts.  Offer and acceptance are necessary elements of a maritime contract. Old Boston Colony Ins. Co. v. K & S Diesel Serv. Inc., 03-3065, 2005 U.S. Dist. LEXIS 6223 (E.D.L.A., April 8, 2005); see also, Yang Ming Marine Transport Corp. v. Okamoto Freighters Ltd., 259 F.3d 1086 (9th Cir. 2001) (familiar principles of contract interpretation govern the construction of a bill of lading).  As long as a private international agreement is not the result of fraud, overreaching, or a gross disparity in bargaining power it will be enforced.  Foster Wheeler, 383 F.3d 354-55.  Courts adhere to the maxim that, a contract should be interpreted so as to give meaning to all of its terms "presuming that every provision was intended to accomplish

some purpose, and that none are deemed superfluous." <u>Foster Wheeler</u>, 383 F.3d at 354 (internal citations omitted).

## F. Contribution and Indemnity

Contribution and indemnity offer two separate mechanisms for shifting all, or part, of a tortfeasors liability. A claim for contribution involves a sharing of liability. It arises when one tortfeasor, who has already been found liable to the plaintiff, seeks to recover all, or part, of its damages from another tortfeasor. 2-1 <u>Benedict on Admiralty</u>, § 1. Indemnity is a mechanism for shifting all the liability for any past or future loss to another. <u>Id.</u> It may take three forms, arising (1) from an express contractual provision; (2) from the relationship of the parties; or (3) as an action for restitution premised upon unjust enrichment. <u>Id.</u> § 9.

## IV. APPLICATION OF LAW TO THE FACTS

## A.  Pemeno's Motion to Alter or Amend Judgment

Pemeno requests that the court reconsider its earlier ruling dismissing Pemeno's claims against Defendants Orient Inspection and International Fumigator. Pemeno claims the court committed legal error when it found (1) that Pemeno had suffered only economic damages and could not recover in tort; and (2) that Pemeno had not identified a duty owed to it, or NASCO, by Orient Inspection or International Fumigator. After considering Pemeno's arguments, the court has determined that no legal error occurred and declines to reconsider its earlier ruling.

## B. Pemeno's Amended Complaint and International Fumigators's Amended Motion to Dismiss

In its amended complaint Pemeno, in an effort to resurrect its case against Orient Inspection and International Fumigators, asserts a claim for breach of the Warranty of Workmanlike Performance ("WWLP"). It claims that International Fumigators and Orient Inspection are liable to it, as a third party beneficiary, for their failure to perform their services in a workmanlike manner. International Fumigators has filed an amended 12(b)(6) motion addressing this new claim.

The Fifth Circuit has ruled that, "The WWLP does not arise unless the putative warrantor is performing some type of *service* for the party asserting the warranty." Fontennot v. Mesa Petroleum Co., 791 F.2d 1207 (5th Cir. 1986).  Generally, ship repair services give rise to an implied WWLP in favor of the carrier in the absence of contractual privity.    See e.g., Todd Shipyards Corp. v. Turbine Service Inc., 674 F.2d 401 (allowing recovery where failure to service turbines resulted in severe damage to ship).  In this case Pemeno is not asserting the existence of a contract between it and Orient Inspection or International Fumigators.  Therefore, its claim depends on whether the court finds that Orient Inspection and International Fumigators were performing a *service* for Pemeno when they inspected and fumigated the wheat.  Pemeno argues that Defendants were performing a service for it because (1) the inspection and fumigation included the cargo hold where the wheat was stored and (2) the supply contract between NASCO and Verde Rocca required that the wheat be fumigated and inspected prior to shipment. The court disagrees that these incidental benefits create a cause of action in Pemeno for breach of the WWLP. In Robin's Dry Dock and East River the Supreme Court reined in tort law, allowing the parties to maritime contracts to apportion liability as they deemed fit.  To recognize a cause of action today in an almost limitless class of individuals, i.e. those who have indirectly benefitted from a service, would run contrary to that teaching.  The court therefore finds that Pemeno has failed to state a claim for breach of the Warranty of Workmanlike Performance.

## C. Dreyfus's Motion for Summary Judgment

Dreyfus urges the court to dismiss the claims against it.  It argues that (1) Pemeno's tort claims are blocked by the economic loss rule; (2) it was not the shipper of the cargo as contemplated by COGSA 1304(6); (3) it was not a party to the bill of lading and therefore cannot be liable under it; and (4) it is not liable in contribution or indemnity.

Dreyfus argues that this court's analysis of Pemeno's tort claims should be guided by the district court's ruling in Maersk Line Ltd. v. CARE, 271 F.Supp.2d 818 (E.D.Va. 2003).  The court is not bound by the Maersk ruling, but it is persuasive authority.   In Maersk, the owner of

a ship, delayed in a foreign port because of a contaminated cargo of wheat, sued the shipper and the supplier of the wheat to recover economic damages.  The district court dismissed the claim against the supplier, ruling that it was precluded by the economic loss rule.  This court is convinced that a similar result is mandated in this case.  As this court has observed[3], the damage to the wheat occurred prior to Pemeno assuming any proprietary interest in it.  Therefore, any tort claim is barred by the economic loss rule expounded in the <u>Robin's Dry Dock</u> line of cases.

Pemeno's second claim – that Dreyfus is liable to it as the shipper of dangerous cargo – is, similarly, not substantiated by the summary judgment evidence.  The bill of lading lists Bags on behalf of Verde Rocca as shipper, not Dreyfus.  Pemeno directs the court's attention to the Ninth Circuit's ruling in <u>Yang Ming Marine Transport Corp. v. Okamoto Freighters Ltd.</u>, 259 F.3d 1086 (9th Cir. 2001), arguing that the court should look beyond the bill of lading to determine the identity of the shipper.  In <u>Yang Ming</u> the court did look beyond the face of the bill of lading to determine the identity of the shipper, but it did so only because the shipper was not identified on the face of the bill itself.  The pertinent language is as follows:

> To properly interpret a bill of lading we must effectuate the intents and understandings of the parties to the bill of lading.  The most obvious place for us to begin our search for the intent of the contracting parties is, of course, the bill of lading.  If the bill of lading fails to evince the clear intent of the parties, we may consider collateral evidence of the parties' intentions.

<u>Yang Ming</u>, 259 F.3d at 1096.  Here, the bill of lading evidences the clear intent of the parties, i.e. that Bags, on behalf of Verde Rocca, act as the shipper, not Dreyfus.  The court therefore finds that Pemeno has failed to state a claim under COGSA 1304(6).

Pemeno has also failed to state a cause of action against Dreyfus for breach of the bill of lading. Pemeno has introduced no evidence showing Dreyfus was a party to the bill of lading. Offer and acceptance are an integral part of contract formation and the court need look no further to grant Dreyfus's motion.

---

[3]See Order, Doc. 42, granting Orient Inspection and International Fumigators motions to dismiss for failure to state a claim.

Finally, turning to Pemeno's claims for indemnification and contribution.  Pemeno is seeking indemnification and contribution for any judgment rendered against it in the pending Libyan proceedings.  Dreyfus's motion for summary judgment argues that NASCO does not have a viable claim against it in contract or tort, and therefore Pemeno's indemnity and contribution claims fail as a matter of law.  While the court is inclined to agree with Dreyfus in this regard, it finds that the question is not ripe.  The Libyan proceedings have not been concluded and no judgment against Pemeno has been rendered.  Therefore, the court orders that Pemeno's contribution and indemnification claims are dismissed without prejudice.

## III.   CONCLUSION

For the reasons set forth above, the Court **ORDERS** that Plaintiff Pemeno Shipping's motion for reconsideration is **DENIED**.  Defendant International Fumigators's amended motion to dismiss for failure to state a claim is **GRANTED**.  Defendant Louis Dreyfus's motion for summary judgment is **GRANTED**.

**SIGNED** at Houston, Texas, this 14th day of March, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE